## SQUIRES' CASE.

*New York Superior Court; Chambers, January,* 1861.

HABEAS CORPUS.—ARREST.—PRIVILEGE OF POLICE OFFICER.— CONSTRUCTION OF STATUTES.

Upon habeas corpus to inquire into the detention of a defendant arrested on civil process, the judge may examine into the legality of the warrant in question, and the arrest or detention under it; and may discharge the prisoner if the case is one in which the process issued would not be allowed by law,—*e. g.,* if the prisoner was arrested in violation of his privilege.

Under section 34 of the Metropolitan Police Act (*Laws of* 1860, 446, § 34),—which provides that "no person holding office under this act shall be liable to military or jury duty, nor to arrest on civil process, or to service of subpœnas from civil courts, while. actually on duty,"—it is only while actually on duty that such persons are exempt from arrest.

*It seems,* however, that the exemption from military service and jury duty is absolute and unlimited.

Punctuation often determines the meaning of a sentence.

Habeas corpus.

The facts are stated in the opinion.

*A. Oakey Hall*, for the relator.—I. The relator is under arrest by the sheriff, who has become his bail, in effect, for the time being, under section 128 of the Marine Court Law of 1813. (*Voorhies' Marine Ct. Pr.*, bottom of page 76.) He is, however, illegally so under arrest, because of section 34 of the Metropolitan Police Act, which says prohibitively, "No person holding office under this act shall be liable to, 1. Military duty; 2. Jury duty; 3. Arrest on civil process; 4. Service of subpœnas from civil courts while actually on duty." See the Irving Hotel arrest and habeas corpus case. Opinion of Judge Peabody. (6 *Abbotts' Pr.*, 37.)

II. The words "while actually on duty" do not control all these prohibitions. For grammatically the qualification applies only to the last antecedent, to wit, the service of a subpœna. The word "nor" precedes the arrest provision, but "or," the other one, showing that it is equivalent to "and," and is a new subject-matter. "*Ad proximum antecedens fiat relatio nisi impediatur sententia*," i. e., relative words refer to the next antecedent, unless by such a construction the meaning of the sentence would be impaired. (*Smith on Stat.*, 655, 656.) If these words "actually on duty" relate to the arrest provisions, so do they to those regarding military and jury duty, which would be absurd. The object of the section is to restrain them from being "military" by choice or by compulsion. Also to protect them from "complicity" of duty and occupation. The meaning of the section under its spirit undoubtedly is, "inasmuch as policemen, &c., have by this statute very peculiar duties, they shall be protected from being drafted into the militia, or the jury-box, or shut up in jail by civil process, otherwise by a combination of suitors the whole force might be paralyzed. By section 17 he is limited to a residence in the district, thus securing his presence to respond to process. Yet inasmuch as it would be a public inconvenience absolutely to forbid service of subpœna, this is limited, so that its execution or service shall not embarrass his *duty* when actually on duty. He who desires a police witness must serve his subpœna when he is not on duty. The mere "act" of arrest is, perhaps, no inconvenience. But after being arrested comes duress—new duties of response, new superiors, new obligations—each of which may conflict with police duties. Therefore to hold that the police,—persons

named in the section,—may be arrested if caught off duty, is to subject them to new duties, new obligations, new vexations, &c., incompatible with the spirit of the act. If this relator may be arrested, providing he was off duty when taken, then comes the *ca. sa.* He is put on the limits one day, and the next is ordered to serve a warrant in Kings county, off the limits. Shall he go or not go?

III. The section is *in favorem libertatis.* Laws which restrain natural liberty are strictly construed. (*Smith's Stat.*, 621.) The laws exempting ambassadors, &c., from arrest are always leniently construed in their favor, because they owe superior and exclusive duties, as well as because of international comity. (Holbrook *a.* Henderson, 4 *Sandf.*, 630.) So are property exemption laws. (Griffin *a.* Sutherland, 14 *Barb.*, 458.)

*Frederick Smith* and *John McKeon*, for the sheriff.—I. The warrant from the Marine Court is valid, and is a justification to the sheriff. The privilege of exemption from arrest as claimed by Squires could not be regarded by the sheriff. Had he discharged the party, the sheriff would have been liable for an escape. (18 *Johns.*, 52; 3 *Hill*, 659; Appendix in notes.)

II. The officer before whom the habeas corpus has been returned, can go no further than to examine into the validity of the process. If that be sufficient to justify the sheriff in the arrest, there is an end to the proceedings. (3 *Hill*, 659.)

III. Where a privilege from arrest is claimed, like that of an attorney, member of assembly, Congress, or foreign ambassador, relief is granted, not by habeas corpus, but by a motion to the court from which the process issues. Courts refuse to interfere with process of other courts. Much less should a commissioner under the Habeas Corpus Act interfere with process of courts. The Marine Court may impose terms if they relieve the party from imprisonment, but the commissioner cannot on habeas corpus. (3 *Hill*, 659, 663; *Abbotts' Digest*, tit. "ARREST, *Privilege from.*") The case in 5 Abbotts' Pr. was but the decision of a Supreme Court commissioner, and cannot control the authorities cited in 3 Hill. The case in Abbott is a different one from that now presented to the commissioner.

IV. If the discharge be ordered on the habeas corpus, this is a virtual dismissal of this suit in the Marine Court.

V. Section 34 of the police act says, the members of the police shall not be liable to arrest on civil process "while on duty." (*Abbotts' Digest*, tit. "ARREST," 225.) The attempt to confine these words to the service of subpœnas is not the natural construction of the section. The true construction is, that while a particular act of duty is being executed (as the arrest of a party offending the criminal law), the policeman shall not be interfered with until that is perfected, but after that he can be arrested. Abbotts' Digest, under the title of "privilege from arrest," says: "Police. Persons holding office under the Metropolitan Police are exempt while actually on duty." (*Laws of* 1857, ch. 569, § 18.) Showing that the author of that work has construed the section according to its fair construction.

VI. If the construction insisted on by Squires be correct, then not only no process in the shape of a *capias ad respondendum*, but no process in the shape of a *capias ad satisfaciendum* can be issued against a policeman. This would be a law so unreasonable as to amount to a denial of right, and call for the interposition of the court. (3 *Pet.*, 290.)

VII. The power assumed by the police authorities to seize property and imprison persons without " due process of law," must be restrained, not extended by the courts.

*A. Oakey Hall*, for the relator, in reply. The court has no power to vacate the arrest after security entered. Moreover, the Marine Court is of limited jurisdiction, Matter of Holbrook (6 *Abbotts' Pr.*, 37), and has no power to vacate an arrest.

WHITE, J.—In this matter, Peter Squires, the relator, applies for a writ of habeas corpus, and sets forth in his petition, that he is a person holding office under the provisions of the Metropolitan Police Act, to wit; a captain of the Metropolitan Police force of the Metropolitan Police District of the State of New York, and claims that as such, he is exempted from arrest on civil process; he further states that on the 23d day of January, 1861, he was arrested by John Kelly, sheriff of the county of New York, under and by virtue of a warrant issued out of the

Marine Court of the city of New York, in an action for false imprisonment, directed to the said sheriff, commanding him to take the said Peter Squires and bring him forthwith before the said Marine Court to answer to the plaintiff in said action ; that being so arrested, he was committed, and is now committed to the custody of one of the general deputies of said sheriff, until he shall find bail under said civil process; and he thereupon prays for this writ of habeas corpus, to be directed to the sheriff aforesaid, and to his said general deputy, commanding them to bring the relator forthwith at chambers before me, according to law, &c.

The writ was issued returnable on the 26th day of January, 1861, upon which day the sheriff certified and returned that he held the relator detained in his custody by virtue of said warrant in the action of false imprisonment above mentioned.

This return the relator traversed, and denied that he was or could be put under arrest of said civil process, because, as alleged in his petition, he is a member of the Metropolitan Police force, and therefore not liable to such arrest.

The counsel for the plaintiff in the action of false imprisonment demurred to this traverse, and the counsel for the relator joining in the demurrer, several points were presented and argued on both sides.

In deciding the matter, however, it is only necessary to state briefly the conclusions to which I have come upon the two principal questions discussed.

*First.* I am satisfied that upon this proceeding I can examine into the legality of the warrant in question, and of the arrest or detention under it. That is the very purpose of the writ of habeas corpus. (3 *Rev. Stat.*, 883, 5 ed., §§ 35, 39, subd. 4, 5 ; p. 887, § 54.) And also that I can discharge the prisoner, if the case is one in which the process issued would not be allowed by law. (3 *Rev. Stat.*, 887–8, 5 ed., § 56, subd. 4.)

*Second.* Upon examining section 34 of the Metropolitan Police Act, as amended in 1860, under which it is claimed that the relator, as a member of the police force created by that act, is exempted at all times from arrest on civil process; I cannot find that the phraseology of that section authorizes such an interpretation of its meaning.

The words of the section are,—

"No person holding office under this act shall be liable to military or jury duty, nor to arrest on civil process, or to service of subpœnas from civil courts, while actually on duty."

It is contended on the part of the relator, that the limitation contained in the above section, of the exemption from arrest to the time "while" the officer is "actually on duty," applies only to the last antecedent clause of the section, that is, to the words "or to the service of subpœnas from civil courts." But I do not think the grammatical construction of the section justifies this conclusion. The phraseology is not as clear, distinct, or definite as it ought to be, and might have been; but still I think it can be sufficiently gathered from the language and structure of the section, that the words "while actually on duty," refer to more than one antecedent. Punctuation often determines the meaning of a sentence as much as any other characteristic of it. And in this case we find a comma inserted after the words, "or to the service of subpœnas from civil courts," and before the words, "while actually on duty," thus separating them, which it would not be proper to do, if the last words related exclusively to the single clause immediately preceding them, but which it would be proper to do, and which is always done in sentences correctly constructed, when there is more than one antecedent to the words immediately following the comma.

I therefore understand this section as conferring upon persons holding office under the Metropolitan Police Act, an absolute unlimited exemption from military and jury duty, and a limited exemption "while actually on duty," from arrest on civil process, or service of subpœnas from civil courts. This, I think, is the most reasonable interpretation of the section, and one which its subject-matter and the arrangement of its language justify.

It is a construction, however, which may possibly not make the law as remedial of the mischief that was aimed at, as it was designed that it should be; but judging from the language employed, I am of opinion that the Legislature only designed to extend the protection from arrest to the members of the police force while they were actually on duty. If it was intended otherwise, the act should be amended so as to make that intention clear and unmistakable.

As it now stands, I must hold that the warrant in the case

before me was lawfully issued; and, there being no pretence that the relator was arrested under it while actually on duty, I must order that he be remanded to the custody of the sheriff.